IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH ESPOSITO and JOHN J.      :
PETRUCCI, JR.,                   :
                                 :
            Plaintiffs           :        Case No. 4:04-CV-475
                                 :
        v.                       :        (Judge Jones)
                                 :
LEONARD GALLI, DANIEL            :
MIMNAUGH,                        :
                                 :
            Defendants.          :

## MEMORANDUM AND ORDER

### August 9, 2006

## THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Pending before the Court are Motions for Summary Judgment (docs. 69, 71) filed by Defendants Daniel Mimnaugh ("Mimnaugh") and Leonard Galli ("Galli") (together, "Defendants") on January 4, 2006.  For the reasons that follow, the Motions shall be granted in part and denied in part.

## PROCEDURAL HISTORY:

The plaintiffs, Joseph Esposito ("Esposito") and John J. Petrucci, Jr. ("Petrucci") (together, "Plaintiffs") initiated this action by filing a complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Middle District of Pennsylvania on March 5, 2004.  In addition to Mimnaugh and Galli,

1

the complaint named David J. Swartz ("Swartz") as a Defendant; however, on

December 6, 2005, after the close of discovery, Plaintiffs filed a Stipulation for the

Voluntary Dismissal of Swartz.  (Rec. Doc. 63).

Plaintiffs' civil rights action asserts violations of the First, Fourth, and

Fourteenth Amendment rights to the United States Constitution, § 1983 conspiracy

claims, as well as various state law claims.

On January 4, 2006, Defendants filed the instant Motions, which have been

briefed by the parties.  The Motions are therefore ripe for disposition.

## STANDARD OF REVIEW:

Summary judgment is appropriate if "there is no genuine issue as to any

material fact and . . . the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340

(3d Cir. 1990).  The party moving for summary judgment bears the burden of

showing "there is no genuine issue for trial."  Young v. Quinlan, 960 F.2d 351, 357

(3d Cir. 1992).  Summary judgment should not be granted when there is a

disagreement about the facts or the proper inferences which a fact finder could

draw from them.  See  Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84

(3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a

genuine issue of material fact.  See Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986).  This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. See id. at 325.

Rule 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(e).  The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor.  See Celotex, 477 U.S. at 322-23 (1986).

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted).  However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992)(citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "As to materiality, the substantive law will identify which facts are material." Id. at 248. A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

**STATEMENT OF RELEVANT FACTS:**

The facts in this matter are largely disputed by the parties. We are presented with detailed disputed factual summaries and extensive discovery material. We will not attempt to conduct a piecemeal examination of each fact presented by the parties, but will discuss the relevant factual background necessary to resolve the pending Motions. We will, where necessary, view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party, Plaintiffs, in our analysis of the pending Motions.

On or about January 29, 2002, Defendant Galli, in his capacity as an Exeter Borough Police Officer, was engaged in a conversation with Michael Stoss ("Stoss"), who was employed in the Public Works Department of Exeter Borough.[1]

---

[1] We note that Plaintiffs dispute the precise date as to when Galli learned about Exeter Borough's loan to one of its employees. (Rec. Doc. 93 at ¶ 5).

Stoss indicated to Galli that he had made a final payment to Exeter Borough ("the Borough") of $150 which he owed to the Borough since the Borough had paid for Stoss to get his driver's license back.  Galli then had a conversation with Stoss' brother, George Stoss, another Borough employee, who told Galli that Borough funds had been used to pay off a money judgment which was the responsibility of Stoss.  Stated another way, Galli became aware that the Borough had made an interest free loan in the amount of $800 to Stoss, a Borough employee, so that he could pay off a personal judgment and get his driver's license back.  When George Stoss testified that he asked Galli whether a personal loan to an employee was an appropriate use of Borough funds and Galli said that he did not know, George Stoss suggested that he should look into it.

Galli then submitted a written request to the Borough Secretary, Debra Serbin ("Serbin") for copies of all the documentation regarding the loan that had been given to Stoss.  Galli conducted an interview with Stoss at his residence on February 6, 2002 in which Stoss confirmed that Borough Council had loaned him money because the Council wanted Stoss to get his driver's license reinstated. Galli subsequently secured a copy of the file documenting the loan to Stoss.  Galli also had a brief conversation with Exeter Borough Police Chief McNeill about the loan to Stoss.  Galli indicated in his investigation that Chief McNeill had advised

him that the Borough Council wanted Stoss to get his license back because the Borough Council did not want to pay someone to taxi Stoss around all day.  At the conclusion of Galli's interviews, he turned over the records and information that he had gathered to the Pennsylvania State Police ("PSP").

Defendant Mimnaugh asserts that Galli then approached Chief McNeil with his findings, expressed his belief that a crime had been committed by Joseph Esposito ("Esposito") and John Petrucci ("Petrucci"), councilmen for the Borough, and possibly others, and asked Chief McNeil to investigate it or to grant him permission to investigate further.  Chief McNeil forbade Galli to investigate further and told him to refer the matter to the PSP.  Plaintiffs assert that Galli approached Chief McNeil and dispute that Galli expressed his belief that Plaintiffs and possibly others had committed a crime.  Rather, Plaintiffs maintain that Galli testified that he "felt that there was a criminal act that had been committed by these two gentlemen [Mr. Esposito and Mr. Petrucci]."  (Rec. Doc. 97 at ¶ 6).  Plaintiffs then contend that such is evidence that Galli was targeting only Plaintiffs from the beginning, even though their involvement with the check at issue was no more than that of the other five councilmen.  Plaintiffs note that Petrucci's involvement was far less than that of the other councilmen because he was not present for the work session or vote and his discussions about the check were fewer than that of other

councilmen.  Id.

We will now address factual circumstances concerning Galli and Mimnaugh, to the extent relevant in the case sub judice.  As teenagers, Galli and Mimnaugh were introduced by a mutual friend and spent some time together socially. Plaintiffs further assert that Galli and Mimnaugh have known each other for over twenty years and that they went on vacation together to Ocean City, Maryland. "Trooper Mimnaugh had been to Leonard Galli's house and spent some time with Galli's mother, father and sister.  Mimnaugh's relationship with Galli is sufficiently familiar that he spontaneously refers to Leonard Galli as 'Lenny.'  As part of his investigation, Trooper Mimnaugh actually told the Exeter Borough Secretary Debra Serbin that he was a friend of Leonard Galli."  Id. at ¶8.  In addition, Galli knew that Mimnaugh was a PSP trooper assigned to the Organized Crime Unit, and they worked out at the same gym.  In fact, Galli approached Mimnaugh at the gym and asked him whether the PSP would be interested in the case.

Mimnaugh told Galli that he would ask his supervisor, Corporal Kevin Schmidt ("Corporal Schmidt") whether the PSP was interested in investigating the matter.  Mimnuagh talked to Corporal Schmidt about the information that Galli had relayed to him and Corporal Schmidt decided that the PSP would investigate the

matter.  Corporal Schmidt assigned the investigation to Trooper David Swartz

("Swartz") as the lead investigator.  In that regard, Plaintiffs contend that the case

was assigned to Swartz because Mimnaugh had a conflict of interest due to his

friendship with Galli.  "Despite Mimnaugh's conflict of interest in the case, he

participated in interviews right from the very beginning of the investigation.

Mimnaugh eventually took over from Swartz and became the affiant/swearing

witness on the Criminal Complaint and Affidavit of Probable Cause to arrest and

charge the plaintiffs with crimes."  Id. at ¶ 13.  After Corporal Schmidt decided

that the PSP would investigate the matter and assigned the case to Swartz, Galli

provided copies of documents he had obtained and his report to the PSP.  There is

a factual dispute between the parties as to whether everything contained in Galli's

report is undisputedly true as Plaintiffs submit that inconsistencies, inaccuracies,

and potential fabrications are present.  An additional factual dispute concerns

whether subsequent to providing the documents to the PSP, Galli played a role in

the decision to charge the Plaintiffs.  Mimnaugh asserts that subsequent to

providing the documents to the PSP, Galli had no conversations with him, Swartz,

or the members of the Luzerne County Office of the District Attorney's Office that

approved the filing of the charges in this matter, Assistant District Attorney

Andrew Duncan and District Attorney David Lupas, and played no role in the

decision to charge Plaintiffs.  (Rec. Doc. 90 at ¶ 17).

After receiving the documents from Galli, Swartz interviewed the current Borough Secretary, Serbin, the prior Borough Secretary, Carol Stolarick ("Stolarick"), the recipient of the $800, Theodore J. Kerpovich, Jr. ("Kerpovich"), and Esposito between February 20, 2002 and February 22, 2002.  Mimnaugh accompanied Swartz on these interviews.  During her interview with Swartz and Mimnaugh, Stolarick said that she wrote the February 12, 1998 check to Kerpovich; however, it is disputed as to whether she wrote the check at the direction of Petrucci.  Stolarick also indicated that Esposito and Petrucci had a discussion in her office about doing a payroll deduction for Stoss for repayment of the loan.

Stolarick told Swartz and Mimnaugh that Petrucci instructed her to transfer federal grant money to the general fund to "pay the Leonard Galli civil suit," and provided them with a note from Petrucci directing her to make the transfers.  In response, Plaintiffs assert that this portion of the interview has no bearing on the $800 check, or anything even tangentially related to the check.  "However, it is evidence that Mimnaugh and Swartz were not merely investigating this $800 loan from Exeter Borough to an employee, but instead were targeting Mr. Petrucci for whatever alleged improprieties they conceivably could uncover."  (Rec. Doc. 97 at

¶ 22).  Stolarick told Swartz and Mimnaugh that she was uncomfortable with the way money was handled in the Borough and she thought that the finances in the Borough were poorly run and very unorganized.  In addition, Stolarick testified that she assumed she was to take direction from Petrucci and Esposito because they were the ones who interacted with her and were the only members of the Finance Committee.  Moreover, Stolarick testified that no one other than Petrucci and Esposito ever directed her to write checks.

Swartz was unable to continue the investigation because from late February 2002 until after Plaintiffs were arrested on April 2, 2002, he was detailed to Reading, Pennsylvania for long-term investigation involving a wiretap.  In Swartz's absence, Mimnaugh and Trooper Thomas Bachman ("Bachman") interviewed Petrucci.

With regard to the loan at issue, it was not identified under "New Business" on the Borough Council Meeting Agenda for January, February, or March 1998. Plaintiffs further note that the March 1998 Agenda lists the $800 check made payable to Theodore Kerpovich under the heading "Prepaid Bills for the Month of February."  There was no public discussion about the loan at a council meeting.[2] While the prepaid bills were approved by council, neither the loan, nor the specific

---

[2] Plaintiffs assert that a review of the applicable minutes reveals that public discussion about any issue was not recorded.  (Rec. Doc. 97 at ¶ 34).

check to Kerpovich were specifically discussed or voted on at the council meeting.

It is undisputed that the check was written on February 12, 1998; however, it is

also undisputed that the check was not given to Kerpovich until at least April 1998.

Accordingly, Defendants argue that there was no reason for the check to be listed

under prepaid bills in February 1998, as prepaid bills encompass money that was

already disbursed before council got to the table.

During her deposition, Serbin testified that when she took the position of

Secretary-Treasurer for the Borough in April 1998, the $800 check to Kerpovich

was in her office and she did not know what it was for.  Plaintiffs additionally note

that Serbin testified that Chief McNeil told her the purpose of the check and made

arrangements for it to be given to its payee.

While Swartz was detailed to Reading, Mimnaugh received a call from the

Luzerne County District Attorney's Office calling a meeting regarding the instant

matter.  One purpose of the meeting was to determine whether charges could be

filed at the same time as the filing of charges against Petrucci in a separate

situation relating to a matter including one Carrie Gula.  Mimnaugh told the caller

that he would bring the information they had obtained to the meeting for review by

the District Attorney's Office and if, after reviewing it, they believed that there was

enough to proceed, the charges would be filed.  In response, Plaintiffs assert that

Mimnaugh chose to withhold critical information which would have caused the District Attorney to tell Mimnaugh not to file the charges.  Prior to this meeting, Assistant District Attorney Andrew Duncan ("ADA Duncan") had been assigned to the case to provide legal advice.  In addition, Mimnaugh provided a copy of the Investigative Report to the individuals present at the meeting.  The parties agree that those definitely in attendance at the meeting were Mimnaugh, ADA Duncan, and District Attorney Lupas.  The District Attorney's Office approved the filing of charges.  It is disputed as to whether at the time the District Attorney's Office approved the charges that they knew neither Esposito nor Petrucci had signed the check.

Plaintiffs were charged with violations of 18 Pa.C.S. § 4113(a), Misapplication of Entrusted Property and Property of Government of Financial Institutions and with a violation of 18 Pa.C.S. § 903(a)(1), Criminal Conspiracy to Commit Misapplication of Entrusted Property and Property of Government or Financial Institutions.  Arrest warrants for Plaintiffs were issued, and the preliminary arraignment on these charges, as well as the charges against Petrucci related to the Carrie Gula matter, were scheduled for April 2, 2002.  The parties are in dispute as to whether Plaintiffs were arrested by Mimnaugh or otherwise taken into custody by him or other law enforcement personnel.  Arrangements were made

between the District Attorney's Office and Plaintiffs' counsel for them to turn themselves in at the preliminary arraignment. At the preliminary arraignment, Plaintiffs were each released on a $20,000 unsecured bond. Plaintiffs add that they spent time in police custody at the State Police Barracks where they were fingerprinted, booked, and had "mug shots" taken. (Rec. Doc. 97 at ¶ 56). At the preliminary hearing on May 23, 2002, the charges were dismissed without prejudice against Plaintiffs and charges have not been refiled.

## DISCUSSION:

### A.   First Amendment Claims

In Defendant Mimnaugh's Motion, he argues that he is entitled to summary judgment on Plaintiff's First Amendment claims as he took no action against Plaintiffs for their speech. "They [Plaintiffs] were not charged for talking about misapplying entrusted funds. If all they had done was talk about it, they would not have been charged with a crime. Rather, they were charged with actually making an off-book, interest-free loan to a Borough employee to pay a personal debt. Counsel for Mimnaugh has found no authority to support First Amendment claim in such circumstances, and therefore Mimnaugh maintains that he is entitled to summary judgment on the First Amendment claims." (Def. Mimnaugh's Br. Supp. Mot. Summ. J. at 15). Mimnaugh alternatively argues that if we find that his

actions do rise to the level of a constitutional violation, he is entitled to summary judgment on the basis of qualified immunity.

In response, Plaintiffs assert that they were prosecuted for their protected political speech about governmental priorities and spending.  Plaintiffs maintain that it was discussion or "talk" about the advisability of the Borough making a loan to an employee which caused Mimnaugh to file charges against Plaintiffs, regardless of their actual participation in the vote and decision not to file charges against the councilmen who actually voted to approve the loan.  (Pls.' Br. Opp. Def. Mimnaugh's Mot. Summ. J. at 13).  In addition, Plaintiffs contend that qualified immunity is not warranted as Mimnaugh withheld a large amount of highly relevant information.  "It was unreasonable to file charges against the plaintiffs because any 'approval' Mimnaugh obtained from the District Attorney's Office was obtained only by withholding huge amounts of critical information from that office."  Id. at 14.

Speech on public issues and political matters lies at the heart of protected speech.  See Zapach v. Dismuke, 134 F. Supp. 2d 682, 687-88 (E.D. Pa. 2001) (citing R.A.V. v. City of St. Paul, 505 U.S. 377, 422 (1992).  Plaintiffs contend that their speech with each other and other individuals as well as all votes at council meetings were classical political speech (Pls.' Br. Opp. Defs.' Mot. Summ. J. at

14

12-13).  After a careful review of the record, we are in agreement with Plaintiffs that their speech constitutes political speech which is deserving of First Amendment protection.  Indeed, and in that regard, in response to Plaintiffs' First Amendment retaliation claim, Defendants' concede that Plaintiffs' speech constituted "protected activity." (Def. Galli's Br. Supp. Mot. Summ. J. at 14, n.3).  As stated, Plaintiffs maintain that it was this protected speech that caused Mimnaugh to file charges against them.  Defendant Mimnaugh disagrees asserting that it was actions, not "talk" that led to the filing of charges.  (Def. Mimnaugh's Br. Supp. Mot. Summ. J. at 15, Def. Mimnaugh Reply Br. at 21).  Accordingly, we find that genuine issues of material fact exist concerning whether this protected speech was critical in the decision to charge Plaintiffs, which precludes our granting of summary judgment with respect to Plaintiffs' First Amendment claims. Defendant Mimnaugh's Motion is therefore denied with respect to Plaintiff's First Amendment Claims.

Defendant Mimnaugh alternatively argues that he should be entitled to summary judgment based on qualified immunity "because a reasonable police officer in Mimnaugh's position would not have known that assisting Swartz in his investigation, attending a meeting called by the District Attorney's Office at which that office approved the filing of charges, and charging plaintiffs with crimes

approved by the District Attorney's Office was constitutionally impermissible and in violation of plaintiff's clearly established First Amendment rights." (Def. Mimnaugh's Br. Supp. Mot. Summ. J. at 15).

A police officer is entitled to qualified immunity where "a reasonable officer could have believed that his or her conduct was lawful, in light of clearly established law and the information in the officer's possession." Sharrar v. Felsing, 128 F.3d  810, 826 (3d Cir. 1997) (citing Hunter v. Bryant, 502 U.S. 224,227 (1991)(per curiam)).  The Third Circuit Court of Appeals has adopted a two-prong qualified immunity test.  "In determining whether qualified immunity applies, we ask: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right, and, if so, (2) whether the right was clearly established at the time of the alleged violation." United Artists Theatre Circuit, Inc. v. Township of Warrington, PA, 316 F.3d 392 (3d Cir. 2003) (citing Saucier v. Katz, 533 U.S. 194 (2001)).

Plaintiffs contend that Defendants should not be entitled to qualified immunity on grounds that Mimnaugh withheld large amounts of information from the District Attorney, information which may have influenced the decision to charge Plaintiffs with crimes.  Specifically, Plaintiffs contend that information including the fact that they did not sign the check and that Exeter council members

16

voted to approve the loan were withheld at the meeting at which it was determined to charge Plaintiffs with crimes. (Pls.' Br. Opp. Defs.' Mot. Summ. J. at 5-6). Defendant Mimnaugh counters that it is undisputed that these facts were known to the members of the District Attorney's office. Mimnaugh further asserts that it was not necessary to identify everything "in the universe" that had not been done during the investigation because such information was available in the Pennsylvania State Police Incident Report.  (Def. Mimnaugh's Reply Br. Supp. Mot. Summ. J. at 5-6).  Therefore, after a careful review of the record, we can only find that genuine issues of material fact exist regarding what the District Attorney factually knew regarding the matter in question such that summary judgment is not warranted.  Put another way, we could only grant qualified immunity by impermissibly resolving a factual dispute in favor of Defendants.  Accordingly, Defendants are not entitled to qualified immunity at this stage.   Defendant Mimnaugh's Motion is denied to that extent.

In Defendant Galli's Motion, he argues that he is entitled to summary judgment on Plaintiffs' First Amendment retaliation claim as such a claim is amorphous and the record is bereft of evidence that Galli retaliated against Plaintiffs or that Galli was instrumental in the issuance of criminal complaints against Plaintiffs.

Plaintiffs counter Galli's argument by indicating that Galli wrongfully asserts that there are no facts linking Galli to the decision to charge Plaintiffs.  In that vein, Plaintiffs maintain that Galli had initiated an investigation even though he was directed not to pursue the matter.  He communicated with Assistant District Attorney Duncan about the matter.  Defendant Mimnaugh told Mr. Petrucci that Galli was "behind the entire incident, including the arrest."  (Pls.' Br. Opp. Defs.' Mot. Summ. J. at 12).  Plaintiffs therefore argue that there is abundant evidence of Galli's involvement linking Galli to the decision to charge Plaintiffs.

The Third Circuit Court of Appeals has adopted a three-part test for First Amendment retaliation claims.  "Plaintiff must prove (1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity cause the retaliation.   The threshold requirement is that the plaintiff identify the protected activity that allegedly spurred the retaliation."  Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 282 (3d Cir. 2004). Defendant Galli concedes the first prong of the test, specifically that Plaintiffs engaged in protected speech.  (Def. Galli's Br. Supp. Mot. Summ. J. at 14, n.3). The second and third prongs of the test are therefore the critical factors in determining the viability of the retaliation claim.

Galli argues that he did "nothing more than provide the accurate findings of

a preliminary investigation to the State Police."  He further states that there was no

evidence of retaliation, that none of the offered information was false, and that

there was no evidence that he (Galli) was instrumental in the issuance of the

"citations" against Plaintiffs.  (Def. Galli's  Br. Supp. Mot. Summ. J. at 14).

Plaintiffs offer counter evidence stating that Galli's "investigation" was self-

motivated and that his meetings with Mimnaugh and the Assistant District

Attorney sufficiently tie him to the criminal charges later filed.  Moreover,

statements allegedly made by Mimnaugh that Galli's "head would explode" are

indicative of Galli's personal interest in the investigation.  As a result of these

genuine issues of material fact, we find that reasonable minds may differ as to

whether Defendants responded with retaliation and whether the protected speech

was the cause of the retaliation.  Accordingly, Defendant Galli's Motion is denied

with respect to Plaintiffs' First Amendment retaliation claim.

### B.  **Fourth Amendment Claims**

With regard to Plaintiffs' § 1983 malicious prosecution claims, Defendants

argue that Plaintiffs cannot prove the essential elements of their Fourth

Amendment claims.  Specifically, Mimnaugh asserts that the proceeding was not

initiated without probable cause and Plaintiffs did not suffer a deprivation of

liberty consistent with the concept of seizure as a consequence of the legal

proceeding.  Galli maintains that there is no evidence that he initiated criminal proceedings and the record establishes "categorically" that neither Plaintiff was seized for purposes of a § 1983 malicious prosecution claim.

In response, Plaintiffs assert that Defendants withheld critical information from the District Attorney's Office such that a full disclosure of facts was lacking and a presumption of probable cause is not warranted in the case sub judice. Plaintiffs additionally maintain that their liberty was deprived to the extent that a seizure occurred.  Alternatively, Plaintiffs argue that if the Court finds that Plaintiffs were not seized within the meaning of the Fourth Amendment, then the Court should permit Plaintiffs' malicious prosecution claims to proceed pursuant to the Fourteenth Amendment.

To prevail on a § 1983 malicious prosecution claim, Plaintiffs must prove that: (1) Defendants initiated a criminal proceeding; (2) the criminal proceeding ended in Plaintiffs' favor; (3) the proceeding was initiated without probable cause; (4) Defendants acted maliciously or for a purpose other than bringing Plaintiffs to justice; and (5) Plaintiffs suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  DiBella v. Borough of Beachwood, 407 F.3d 599, 602 (3d Cir. 2005) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).

First, we note that Mimnaugh concedes the first, second, and fourth elements of a § 1983 malicious prosecution claim.  In that regard, Mimnaugh concedes that as the affiant on the criminal complaints, he initiated the criminal proceedings against Plaintiffs.  He also concedes that the dismissal of the charges without prejudice at the preliminary hearing, combined with the decision not to refile the charges, satisfy the requirement that the criminal proceedings ended in Plaintiffs' favor.  In addition, Mimnaugh concedes, for purposes of the instant Motion, that there are factual disputes as to whether he made certain statements to Plaintiffs.

With regard to Defendant Galli, it appears that he focuses upon the first and fifth elements of a § 1983 malicious prosecution claim, specifically, that he did not initiate the criminal proceedings against Plaintiffs and that Plaintiffs did not suffer a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Even assuming _arguendo_ that Defendants both initiated the criminal proceedings against Plaintiffs and that Defendants initiated the proceeding without probable cause, we hold that Defendants are entitled to summary judgment on Plaintiffs' § 1983 malicious prosecution claims as such claims fail on the final requisite element.  In that regard, we find that Plaintiffs did not suffer a deprivation of liberty consistent with the concept of seizure as a consequence of a legal

21

proceeding, for the reasons that follow.

In this case, while arrest warrants were issued for Plaintiffs, arrangements were made between the District Attorney's Office and Plaintiffs' counsel for them to voluntarily turn themselves in at the preliminary arraignment. At the preliminary arraignment, Plaintiffs were each released on a $20,000 unsecured bond with no restrictions or conditions on their freedom of movement. At the subsequent preliminary hearing, the charges against Plaintiffs were dismissed without prejudice. Neither Plaintiff was ever incarcerated, transported in a police vehicle, or handcuffed.

The Third Circuit Court of Appeals has held that the requirement to appear at court proceedings, without more, does not constitute a seizure for purposes of a Fourth Amendment malicious prosecution claim. DiBella, 407 F.3d at 603; accord Bristow v. Clevenger, 80 F. Supp. 2d 421 (M.D. Pa. 2000). Moreover, we agree with Defendants that the recent Third Circuit Court of Appeals case, DiBella v. Borough of Beachwood, 407 F.3d 599 (3d Cir. 2005), is squarely on point with the facts of the above-captioned case. In holding that when the only meaningful restriction on one's liberty is the compulsion to appear at mandatory court proceedings, the Third Circuit reasoned as follows:

> Appellants reliance on dicta from Gallo [v. City of Philadelphia, 161 F.3d 217 (3d Cir. 1998)] is misplaced because 'prosecution without

probable cause is not, in and of itself, a constitutional tort.' <u>Id.</u> at 222
(citing <u>Albright</u>, 510 U.S. at 274).  The type of constitutional injury
the Fourth Amendment is intended to redress is the deprivation of
liberty accompanying prosecution, not prosecution itself.  <u>Id.</u>

If <u>Gallo</u> was a 'close question,' here there could be no seizure
significant enough to constitute a Fourth Amendment violation in
support of a Section 1983 malicious prosecution action.  Gallo was
arrested and subjected to significant pretrial restrictions.  DiBella and
McLaughlin were only issued a summons; they were never arrested;
they never posted bail; they were free to travel; and they did not have
to report to Pretrial Services.  Their liberty was restricted only during
the Municipal Court trials and the Fourth Amendment does not extend
beyond the period of pretrial restrictions.  <u>See</u>, <u>Torres v. McLaughlin</u>,
163 F.3d 169, 174 (3d Cir. 1998) ('the limits of Fourth Amendment
protection relate to the boundary between arrest and pretrial
detention.'); <u>see also</u>, <u>Donahue v. Gavin</u>, 280 F.3d 371, 381 (3d Cir.
2002) (same).

Pretrial custody and some onerous types of pretrial, non-custodial
restrictions constitute a Fourth Amendment seizure.  DiBella and
McLaughlin failed to state a cause of action for malicious prosecution
because their attendance at trial did not qualify as a Fourth
Amendment seizure.

<u>DiBella</u>, 407 F.3d at 602-3.  Accordingly, as Plaintiffs' attendance at the

preliminary arraignment and the preliminary hearing does not amount to a seizure

under the Fourth Amendment, Defendants' Motions are granted with respect to

Plaintiffs' § 1983 malicious prosecution claims.[3]

---

[3] In that regard, we find it notable that Plaintiffs' submission in opposition to Defendant
Galli's Motion candidly states, in pertinent part, as follows: "While the restrictions on them
[Plaintiffs] were more severe than those on the plaintiffs in DiBella, a fair reading of DiBella
would certainly permit this Court to grant judgment for defendants on the Fourth Amendment
malicious prosecution claim."  (Pls.' Br. Opp. Def. Galli's Mot. Summ. J. at 19-20).

## C.   Fourteenth Amendment Claims

We will now address Plaintiffs' assertion that even if the Court finds that Plaintiffs were not seized within the meaning of the Fourth Amendment, that this Court should nonetheless permit their federal malicious prosecution claims to proceed to trial under the Fourteenth Amendment. A careful review of Plaintiffs' submissions appears to indicate that in light of the Third Circuit's decision in DiBella and its conceded effect upon Plaintiff's Fourth Amendment claim, Plaintiffs are advancing a separate Fourteenth Amendment substantive due process claim.

As accurately submitted by Mimnaugh, the United States Supreme Court has instructed that "[t]he first inquiry in any § 1983 suit is to isolate the precise constitutional violation with which [the defendant] is charged." Graham v. Connor, 490 U.S. 386, 394 (1989)(internal citations omitted) (quoting Baler v. McCollan, 443 U.S. 137, 140 (1979)).  The Supreme Court has stated that "[t]he Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." Albright v. Oliver, 510 U.S. 266, 274 (1994). However, the accused is not entitled to judicial oversight or review of the decision to prosecute, Id. (quoting Gerstein v. Pugh, 420 U.S. 104, 11 (1975)), and "prosecution without probable cause is not, in and of itself, a constitutional tort."

24

DiBella, 407 F.3d at 602-3 (quoting Gallo, 171 F.3d at 222).

Plaintiffs attempt to rely upon Torres v. McLaughlin, 163 F.3d 169 (3d Cir. 1998), to argue that they should be permitted to pursue a malicious prosecution claim under the Fourteenth Amendment; however, we find that Plaintiffs' reliance upon Torres is misplaced. In Torres, the Third Circuit addressed the unique circumstance of a claim arising from post-conviction incarceration, which is clearly factually distinguishable from the instant case. We find that Plaintiffs' attempted claim, if they had one, would on these facts have to be grounded in the Fourth Amendment; however, as previously noted, Plaintiffs did not suffer a seizure. As such, they do not have a viable Fourth Amendment claim. Plaintiffs' effort to create an alternative claim for malicious prosecution under the Fourteenth Amendment is novel, but ultimately a failure. Not only does it lack precedential support, but if allowed would represent a sea change in the way malicious prosecution cases are measured. Assuredly, the floodgates would open. Accordingly, to the extent that Plaintiffs argue that the Court should permit their federal malicious prosecution claims to proceed under the Fourteenth Amendment, Defendants are entitled to summary judgment in that regard.

### D.   Section 1983 Conspiracy Claims

In order to establish a § 1983 conspiracy claim, Plaintiffs "must show 'a

combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means for an unlawful purpose.'" Panayotides v. Rabenold, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999), aff'd, 210 F.3d 358 (3d Cir. 2000) (quoting Hammond v. Creative Financial Planning, 800 F. Supp. 1244,1248 (E.D. Pa. 1992)).  Both Defendants assert that there is insufficient evidence demonstrating any "communication, consultation, cooperation or command" from which a conspiracy or agreement can be inferred. (Def. Galli's  Br. Supp. Mot. Summ. J. at 15, Def. Mimnaugh's  Br. Supp. Mot. Summ. J. at 24).  Plaintiffs disagree and cite evidence, including two meetings between Galli and Mimnaugh, as well as separate statements made by Mimnaugh to the Plaintiffs that Galli's "head would blow off" if the Plaintiffs were not charged with crimes. (Pls.' Br. Opp. Def. Galli's Mot. Summ. J. at 13-14, Pls.' Br. Opp. Def. Mimnaugh's Mot. Summ. J. at 27-28).  Alternatively, Defendant Mimnaugh contends that summary judgment is appropriate because Plaintiffs have failed to demonstrate a violation of their constitutional rights.  (Def. Mimnaugh's  Br. Supp. Mot. Summ. J. at 24). Mimnaugh relies on Garner v. Township of Wrightstown, 819 F. Supp. 435, 445 n.7 (E.D. Pa. 1993) (quoting Defeo v. Sill, 810 F.Supp. 648, 658 (E.D. Pa. 1993), aff'd, 16 F.3d 403 (3d Cir. 1993)) which states that in the absence of a constitutional deprivation, there can be no liability under § 1983.  However, as

previously explained, summary judgment is inappropriate at this juncture with regard to Plaintiffs' First Amendment claims. Therefore, we do not find that Plaintiffs have failed to demonstrate a violation of their First Amendment constitutional rights. Moreover, Plaintiffs offered sufficient evidence of communications and personal statements made by Defendants to appropriately dispute Defendants' assertion that there is no evidence of a conspiracy. Defendants' Motions are accordingly denied with respect to Plaintiffs' § 1983 conspiracy claims.

### E.     Equal Protection Claims

Plaintiffs claim to have presented sufficient evidence to sustain an Equal Protection Clause claim. They assert that only they were charged with crimes in connection with the $800 check, while other council members who were present at the vote to approve the check, or who actually signed the check, were not charged with the same crimes. Plaintiffs further assert that an Equal Protection analysis should proceed under the strict scrutiny standard of review because they were charged for exercising a fundamental constitutional right, namely discussing policy choices for a governmental entity. This test requires that government actions can be sustained only if "they are suitably tailored to serve a compelling state interest." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432 (1985). (Pls.' Br. Opp.

Def. Mimnaugh's Mot. Summ. J. at 23-24, Pls.' Br. Opp. Def. Galli's Mot. Summ. J. at 15-16).

In response, Defendant Mimnaugh argues that this claim was not previously asserted in the complaint, no discovery was completed on the claim, and Plaintiffs' counsel did not mention it when discussing Plaintiff's Fourteenth Amendment claims with counsel prior to the filing of summary judgment motions.  (Def. Mimnaugh's Reply Br. Supp. Mot. Summ. J. at 24, n.23). "In other words, until service of plaintiffs' opposition brief, Mimnaugh had absolutely no notice that this claim existed.  To the extent that summary judgment is denied on this claim, Mimnaugh maintains that he has not had a fair opportunity to conduct discovery with respect to this claim, and would request that the Court reopen discovery to allow him to do so and file a supplemental motion for summary judgment."  Id.

We initially note that on March 27, 2006, we approved a stipulation by the parties to move the trial term in the case sub judice to January 2007.  (Rec. Doc. 109).  Inasmuch as Defendant Mimnaugh is arguing surprise with regard to Plaintiffs' Equal Protection Claim and asserts a lack of notice regarding the existence of this claim, we find that it would be inappropriate and imprudent under the circumstances to comment on the merits of the claim at this juncture.  As the Court adopted the parties' stipulation to move the trial term to January 2007, the

current discovery cut-off date is September 18, 2006 and the dispositive motion

cut-off date is October 2, 2006, in accordance with the Court's calendar.

Accordingly, after conducting appropriate discovery on Plaintiff's Equal Protection

Claim, Defendants reserve the right to file a supplemental summary judgment

motion restricted to Plaintiffs' Equal Protection Claim on or before October 2,

2006, if they so desire.

### F.   <u>State Law Claims</u>

We initially note that by agreement of counsel, Plaintiffs are not asserting

state law claims contained in Counts Three, Four, Five, Eight, Nine, and Ten

against Defendant Mimnaugh.  We will therefore determine whether Plaintiffs have

stated the following state law claims as against Defendant Galli.

### i.   <u>Malicious Prosecution</u>

Galli again argues, here as it relates to the state law claim for malicious

prosecution, that there is no evidence that he initiated the criminal proceeding

against Plaintiffs and that his only involvement was the act of providing

information to the PSP that both Plaintiffs admit was not false.  Galli therefore

contends that Plaintiffs' state law malicious prosecution claim must be dismissed.

In response, Plaintiffs assert that the complaint alleged a conspiracy to commit

malicious prosecution claim against Galli, which in effect ties him to Mimnaugh's

actions in initiating the proceedings.  Plaintiffs thus maintain that sufficient evidence exists for Galli to be held liable for conspiracy to commit malicious prosecution.

In Counts Three and Eight of their complaint, Plaintiffs allege malicious prosecution claims which indicate, in part, that Defendants "conspired to cause, and actually caused, criminal proceedings to be initiated against [Plaintiffs], resulting in [their] arrest.  (Rec. Doc. 1 at ¶¶ 29-34, 48-53).

Initially, we note that Plaintiffs' cause of action for civil conspiracy only exists if there is a cause of action for the underlying act.  Simmons v. Poltrone, 1997 WL 805093 at *5 (E.D. Pa. 1997); Gordon v. Lancaster Orthopedic Hosp. Assoc., Inc., 489 A.2d 1364, 1371 (Pa. Super. Ct. 1985) (holding that where there was no basis for defamation there could be no action for conspiracy to defame). Accordingly, if we find that Plaintiffs have failed to state a cause of action for malicious prosecution, then no action for conspiracy to commit malicious prosecution can lie.

In Pennsylvania, a plaintiff alleging common law malicious prosecution must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other

than bringing the plaintiff to justice.  <u>Merkle v. Upper Dublin Sch. Dist.</u>, 211 F.3d

782, 791 (3d Cir. 2000); <u>see</u> <u>also</u> <u>Corrigan v. Central Tax Bureau of Pa., Inc.</u>, 828

A.2d 502, 505 (Pa. Cmwlth. 2003).

Although Defendant Galli has argued that he did nothing more than provide

the accurate findings of a preliminary investigation to the PSP, Plaintiffs have

presented counter evidence revealing the fact that Galli may have maintained a

self-motivated, personal interest in the investigation of Plaintiffs.  In addition and

as previously noted, a factual dispute exists between the parties regarding whether

subsequent to providing the relevant documents to the PSP, Galli played a role in

the decision to charge the Plaintiffs.

The United States District Court for the Eastern District of Pennsylvania has

recently explained that a court's inquiry should be "whether the defendant either

directly instituted the proceedings against the plaintiff or can be charged with the

responsibility for the institution of the proceedings."  <u>Cooper v. Muldoon</u>, 2006

U.S. Dist. LEXIS 23388 at * 16 (E.D. Pa. Apr. 26, 2006).  While we are in

agreement with Galli that Mimnaugh instituted the criminal proceedings against

Plaintiffs as he was the affiant on the criminal complaints, a factual issue remains

as to whether Galli can be charged with the responsibility for the institution of the

proceedings based upon a conspiracy or agreement with Mimnaugh that resulted in

the institution of criminal charges against Plaintiffs.  While we find this claim to be

novel and perhaps tenuous, with a lack of clear guidance in the caselaw, the better

practice is to deny summary judgment under the circumstances.  It is important to

additionally note that genuine issues of material fact exist regarding whether the

proceeding brought against Plaintiffs was initiated without probable cause and

whether Defendant Galli acted maliciously or for a purpose other than bringing

Plaintiffs to justice.  Summary Judgment is accordingly denied regarding

Plaintiffs' state law malicious prosecution claim against Galli.

### ii.   **Abuse of Process**

After a careful review of the record and applicable case law, we agree with

Defendant Galli that Plaintiffs' abuse of process claims must be dismissed, for the

reasons that follow.

The Pennsylvania Supreme Court has described abuse of process as follows:

> The gist of an action for abuse of process is the improper use of
> process after it has been issued, that is a perversion of it.  An abuse is
> where the party employs it for some unlawful object, not the purpose
> which it is intended by the law to effect; in other words, a perversion
> of it . . . abuse of civil [or criminal] process is concerned with a
> perversion of a process after it is issued.

McGee v. Feege, 535 A.2d 1020, 1023 (Pa. 1987) (citations omitted); see also

Gleeson v. Robson, 2005 WL 1210948 at *29 (M.D. Pa. 2005).  Additionally, in

order to state a claim for abuse of process, the plaintiff must allege that the

defendant: (1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designated, and (3) harm has been caused to the plaintiff. Gleeson, 2005 WL 1210948 at *29; see also Douris v. Schweiker, 229 F. Supp. 2d 391, 404 (E.D. Pa. 2002). Galli accurately submits that a claim for abuse of process requires that the plaintiff offer some proof of a "definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process." Gleeson, 2005 WL 1210948 at *29. Examples of actions that are recoverable under the abuse of process tort include extortion by means of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution. Id. "There is no cause of action for abuse of process if the claimant, even with bad intentions, merely carried out the process to its authorized conclusion." Id. Additionally, the fact that judicial process was initiated with a bad motive is not enough; an allegation of coercive use of the process is required. Id.; see also Internet Billions Domain v. Venetian Casino Resort, LLC, 2002 WL 1610032 at *3 (E.D. Pa. May 31, 2002).

Although Plaintiffs agree with Galli that a claim for abuse of process requires that such occurred *after* the process is issued, they argue that after the process was issued, "Galli's appearance at the preliminary arraignment simply to gawk at the humiliated plaintiffs is sufficient to proceed on this claim." (Pls.' Br.

Opp. Def. Galli's Mot. Summ. J. at 23).  We do not find that Galli's mere presence at Plaintiffs' preliminary arraignment makes out a claim for abuse of process. Moreover, Galli's presence at Plaintiffs' preliminary arraignment does not in our view constitute improper use of process after it has been issued, sufficient to be a "perversion" of such process.  See McGee, 535 A.2d at 1023; see also Gleeson, 2005 WL 1210948 at *29.  While it may have been unseemly, it cannot be elevated to the degree that Plaintiffs seek in aid of this portion of their action.  Accordingly, Defendant Galli's Motion is granted with respect to Plaintiffs' abuse of process claims.

### iii.    Intentional Infliction of Emotional Distress

The tort of intentional infliction of emotional distress ("IIED") is defined under Pennsylvania law as "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."  Dixon v. Boscov's Inc., 2002 WL 1740583 at *3 (E.D. Pa. 2002) (quoting Restatement (Second) of Torts § 46).  In addition, courts have been wary to allow recovery for a claim of IIED.  "Only if conduct which is extreme or clearly outrageous is established will a claim be proven."  Dixon, 2002 WL 1740583 at *3 (quoting Shaner v. Synthes, 204 F.3d 494, 507 (3d Cir. 2000)).

Stated another way, the United States District Court for the Eastern District of

Pennsylvania has explained that "[l]iability has been found only where the conduct

has been so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious and utterly intolerable

in a civilized community." Fox v. Horn, 2000 WL 49374 at *9 (E.D. Pa. 2000).

Finally, we note that to state a claim for IIED under Pennsylvania law, a plaintiff

must demonstrate a physical injury, harm or illness caused by the defendant's

conduct. Id.; see also Rolla v. Westmoreland Health Sys., 651 A.2d 160, 163 (Pa.

Super. Ct. 1994). "There must be objective proof supported by competent medical

evidence that the plaintiff actually suffered the claimed distress." Gleeson, 2005

WL 1210948 at *30.

Plaintiffs' IIED Claims, counts five and ten of the complaint, fail to allege a

physical injury, harm or illness caused by Defendant Galli's conduct. In both

counts, Plaintiffs assert that "Defendants, by their extreme and outrageous conduct,

intentionally or recklessly caused [Plaintiffs] to suffer severe emotional distress."

(Rec. Doc. 1 at ¶¶ 39-40, 58-59). Apart from failing to allege a physical injury, the

record is devoid of conduct which is extreme or clearly outrageous by Defendant

Galli sufficient to state a claim under IIED.[4]

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.    Defendant Galli's Motion for Summary Judgment (doc. 69) is granted in part and denied in part.

2.    Defendant Mimnaugh's Motion for Summary Judgment (doc. 71) is granted in part and denied in part.

3.    Summary Judgment is granted with respect to Plaintiffs' Fourth Amendment malicious prosecution claims, Fourteenth Amendment malicious prosecution claims, state law abuse of process claims, and state law intentional infliction of emotional distress claims.

4.    Summary Judgment is denied with respect to Plaintiffs' First Amendment claims, § 1983 conspiracy claims, and state law

---

[4] In their submission, Plaintiffs refers the Court to <u>Gleeson v. Robson</u>, 2005 WL 1210948 (M.D. Pa. 2005), in which our colleague Chief Judge Vanaskie held that there was sufficient evidence to warrant submission of the IIED claim to a jury where the defendants charged a medical doctor with crimes without probable cause. Plaintiffs submit that the Chief Judge noted the "intent to sensationalize" the issue, and found that "[i]ts devastating impact on a health care professional is readily apparent." <u>Gleeson</u>, 2005 WL 1210948 at *30.

While we have no reason to contest the assertion that Plaintiffs' arrest with its suggestion of financial improprieties by two councilmen had a detrimental effect on them, we find the <u>Gleeson</u> case which involved a "devastating impact on a health care professional" based upon the nature and number of charges brought and suggesting an intent to sensationalize the issue to be factually distinguishable from the instant case. In addition, Chief Judge Vanaskie acknowledges that the initiation of a criminal prosecution without probable cause may not support a cause of action for IIED in all cases and cites to appropriate case law in support thereof. <u>Id.</u>; <u>see also</u> <u>Simmons</u>, 1997 WL 805093 at *4-5 (finding conduct was not outrageous when defendants conspired to have plaintiff falsely arrested and charged for burglary).

malicious prosecution claim.

5.      With regard to Plaintiff's Equal Protection Claim, after conducting

        appropriate discovery on such claim, Defendants reserve the right to

        file a supplemental Summary Judgment Motion restricted to

        Plaintiffs' Equal Protection Claim on or before October 2, 2006, the

        dispositive motion deadline, if they so desire.


                                            s/ John E. Jones III
                                            John E. Jones III
                                            United States District Judge